# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# EASTERN DIVISION

|  |  |
|---|---|
| MAURICIO JAVIER ESCOBAR GUERREO,<br><br>Petitioner,<br><br>v.<br><br>FERETI SEMAIA et al.,<br><br>Respondents. | Case No. 5:26-cv-01624-DFM<br><br>ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS |

## I.   INTRODUCTION

On April 2, 2026, Petitioner Mauricio Javier Escobar Guerrero filed a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241. See Dkt. 1 ("Petition"). On April 10, 2026, Respondents filed a three-page Answer. See Dkt. 10 ("Answer"). On April 13, 2026, Petitioner filed a Reply. See Dkt. 11 ("Reply").

For the reasons set forth below, the Court GRANTS IN PART and DENIES IN PART the Petition. Petitioner shall be RELEASED FROM CUSTODY within three (3) days.

## II.   BACKGROUND

Petitioner is a 26-year-old native and citizen of El Salvador who entered the United States on or about July 22, 2016, at or near Hidalgo, Texas, as an unaccompanied child at the age of seventeen. See Petition ¶¶ 1-2, 15. After his

apprehension, Petitioner was designated an unaccompanied minor, a classification granting special protections under the William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 ("TVPRA"). See id. ¶¶ 3, 40-42. Petitioner was issued a Notice to Appear and placed in removal proceedings. See id.

Petitioner was briefly placed in the custody of the Office of Refugee Resettlement ("ORR") and, after an assessment that he was neither a danger to the community nor a flight risk, was released into the care of his mother in Los Angeles, California. See id. ¶ 4. Petitioner has an approved petition for Special Immigrant Juvenile Status ("SIJS"), a humanitarian immigration protection for young people who have suffered parental abuse, neglect, or abandonment. See id. ¶¶ 5, 46-47. Around September 2021, based on his SIJS grant, Petitioner became eligible to apply for adjustment to lawful permanent resident status. See id. ¶ 6. However, Petitioner's removal proceedings were administratively closed in May 2022 due to visa retrogression and were re-calendared in August 2025. See id. His adjustment of status application is still pending with the immigration court. See id.

On January 6, 2026, Petitioner was arrested by local authorities for misdemeanor possession of methamphetamines. See id. ¶ 7. On January 7, Petitioner was released from criminal custody related to the arrest. See id. Immediately upon his release, U.S. Immigration and Customs Enforcement ("ICE") arrested Petitioner without a warrant, despite his classification as an unaccompanied minor under the TVPRA, his prior release from ORR custody, and his approved SIJS. See id. Since then, Petitioner has been detained at the Adelanto ICE Processing Center in Adelanto, California. See id. ¶ 8.

Petitioner asserts that his warrantless re-detention without a pre-deprivation hearing violates his Fourth and Fifth Amendment rights, and he seeks immediate release from custody. See id. ¶¶ 9-12. Respondents agree that

2

Petitioner is entitled to a bond hearing under 8 U.S.C. § 1226(a) within seven days, but argue that his drug arrest constitutes "changed circumstances" justifying the detention and oppose outright release. See Answer at 2.

### III.    DISCUSSION

The Court has jurisdiction under 28 U.S.C. § 2241 because Petitioner is "in custody" and challenges the constitutionality of that physical confinement. See Trinidad y Garcia v. Thomas, 683 F.3d 952, 956 (9th Cir. 2012); Preiser v. Rodriguez, 411 U.S. 475, 484 (1973).

### A.    Statutory Framework

The parties agree that Petitioner's detention is governed by 8 U.S.C. § 1226(a), the general detention provision applicable to noncitizens in removal proceedings who are not subject to mandatory detention under § 1226(c). See Answer at 2 ("[Petitioner's] remedy is to have a bond hearing held before an Immigration Judge under Section 1226(a).").

Under § 1226(a), the Government "may continue to detain" or "may release the alien" on bond or conditional parole, "pending a decision on whether the alien is to be removed from the United States." Federal regulations provide that "aliens detained under § 1226(a) receive bond hearings at the outset of detention." Jennings v. Rodriguez, 583 U.S. 281, 306 (2018) (citing 8 C.F.R. § 236.1(d)(1)). Once released, an alien's bond is subject to revocation "at any time" under 8 U.S.C. § 1226(b). See id. at 309. However, the Board of Immigration Appeals has placed a limitation on this authority: "where a previous bond determination has been made by an immigration judge, no change should be made by [the Department of Homeland Security ("DHS")] absent a change of circumstance." Matter of Sugay, 17 I&N Dec. 637, 640 (BIA 1981); see also Panosyan v. Mayorkas, 854 F. App'x 787, 788 (9th Cir. 2021). The Government's apparent practice, even where the initial release decision was made by a DHS officer rather than an immigration judge,

has been to require a showing of changed circumstances before re-arrest. See Saravia v. Sessions, 280 F. Supp. 3d 1168, 1197 (N.D. Cal. 2017) (summarizing government counsel's testimony).

**B.    Substantive and Procedural Due Process**

Noncitizens physically present in the United States are protected by the Due Process Clause of the Fifth Amendment. See Zadvydas v. Davis, 533 U.S. 678, 693 (2001). "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." Id. at 690 (citation omitted); see also United States v. Salerno, 481 U.S. 739, 755 (1987) ("In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception.").

In Morrissey v. Brewer, the Supreme Court recognized that the decision to release a person from custody creates "at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions," generating a liberty interest that "is valuable and must be seen as within the protection of" due process. 408 U.S. 471, 482 (1972). District courts in this circuit consistently recognize that this principle extends to individuals subject to removal proceedings. See Ortega v. Bonnar, 415 F. Supp. 3d 963, 969 (N.D. Cal. 2019) ("Just as people on preparole, parole, and probation status have a liberty interest, so too does [petitioner] have a liberty interest in remaining out of custody on bond." (citations omitted)); Garro Pinchi v. Noem, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025) ("[E]ven when ICE has the initial discretion to detain or release a noncitizen pending removal proceedings, after that individual is released from custody she has a protected liberty interest in remaining out of custody." (citation omitted)); Guillermo M.R. v. Kaiser, 791 F. Supp. 3d 1021, 1031 (N.D. Cal. 2025) ("The fact that Petitioner is subject to

discretionary conditions of release likewise does not mean he lacks a protectable liberty interest and can be re-detained without process.”).

Here, Petitioner was released from ORR custody in 2016 after a determination that he was neither a danger to the community nor a flight risk. See Petition ¶ 4. Since then, Petitioner lived in the community, attended all immigration court dates, obtained SIJS, and filed for adjustment of status. See id. ¶¶ 4-6, 10. His release, his lengthy period of conditional freedom, and his deep community ties created a constitutionally protected liberty interest in remaining out of detention. See Doe v. Becerra, 787 F. Supp. 3d 1083, 1093-94 (E.D. Cal. 2025) (recognizing that the lengthy duration of conditional release, as well as the meaningful community connections made during that time, created “a powerful interest for Petitioner in his continued liberty”).

Petitioner’s liberty interest is further reinforced by his specific status as a former unaccompanied minor released by ORR. In Saravia, 905 F.3d 1137, the Ninth Circuit affirmed a preliminary injunction requiring the Government to provide unaccompanied minors who had been detained by ORR, released to a parent or sponsor, and subsequently re-arrested by DHS, with a prompt hearing before a neutral decisionmaker at which the minors could contest the basis for their re-arrest. The court recognized that ORR’s initial release decision reflects a determination that the minor was neither dangerous nor a flight risk, and that allowing the Government to re-arrest such individuals without process would effectively nullify the protections Congress enacted in the TVPRA. See id. at 1143-45. Here, Petitioner entered the United States as an unaccompanied minor, was placed in ORR custody, and was released to his mother after ORR determined he was neither a danger nor a flight risk. He falls within the class of individuals the Ninth Circuit held are entitled to due process protections before re-detention.

**C.**     <u>The *Matthews* Factors Weigh in Favor of Petitioner</u>

To determine what procedures are constitutionally required to protect a liberty interest, courts apply the three-part test established in <u>Mathews v. Eldridge</u>, 424 U.S. 319, 335 (1976): (1) the private interest affected by the official action; (2) the risk of erroneous deprivation through the procedures used and the probable value of additional or substitute procedural safeguards; and (3) the Government's interest, including the fiscal and administrative burdens of additional procedural requirements. The Ninth Circuit has observed that <u>Mathews</u> is "a flexible test that can and must account for the heightened governmental interest in the immigration detention context." <u>Rodriguez Diaz v. Garland</u>, 53 F.4th 1189, 1206 (9th Cir. 2022) (citations omitted).

First, Petitioner has a significant private interest in remaining free from detention. He lived in the community for approximately nine years after his release from ORR custody. During that time, he attended all immigration court hearings, built deep ties to the United States, obtained SIJS, and filed a pending application for adjustment of status. <u>See</u> Petition ¶¶ 4-6, 10. His continued liberty interest in remaining on release is undermined by his immigration detention without a pre-detention hearing. <u>See</u> <u>Doe</u>, 787 F. Supp. 3d at 1093-94. This factor weighs strongly in Petitioner's favor.

Second, the risk of erroneous deprivation is considerable. Petitioner has not received any bond hearing, any custody redetermination, or any individualized hearing before a neutral decisionmaker since his re-detention on January 7, 2026. <u>See</u> Petition ¶ 8; Reply at 2. Because there have been no procedural safeguards to determine whether Petitioner's detention is justified, the risk of erroneous deprivation is high. <u>See</u> <u>Doe</u>, 787 F. Supp. 3d at 1094. This factor weighs strongly in Petitioner's favor.

Third, the Government's interest in detaining Petitioner without a pre-deprivation hearing is low. <u>See</u> <u>Hasratyan v. Bondi</u>, No. 26-210, 2026 WL

288909, at *4 (C.D. Cal. Feb. 2, 2026) ("Finally, as many other courts have recognized, there is no meaningful countervailing government interest that supports detaining previously paroled noncitizens like petitioner without a pre-detention hearing."). While the Government has a "significant" interest in enforcing its immigration laws, Rodriguez Diaz, 53 F.4th at 1209, that interest is diminished where, as here, Petitioner lived in the community for nine years, attended all court dates, and has a pending path to lawful permanent resident status through SIJS. Respondents released Petitioner in 2016 and did not seek to re-detain him until January 2026. See Doe, 787 F. Supp. 3d at 1094 ("The effort and cost required to provide Petitioner with procedural safeguards is minimal."). This factor weighs in Petitioner's favor.

All three Mathews factors weigh in Petitioner's favor. Respondents' re-detention of Petitioner without any hearing before a neutral decisionmaker violated his procedural due process rights under the Fifth Amendment.

**D.   Fourth Amendment and Unlawful Arrest**

Petitioner argues that ICE's warrantless arrest violated the Fourth Amendment and 8 U.S.C. § 1357(a)(2) because ICE lacked a warrant and lacked probable cause to believe Petitioner was a flight risk. See Petition ¶¶ 12, 97-110. Even assuming the initial arrest was procedurally defective, the traditional remedy in civil immigration proceedings is suppression of evidence, not immediate release from custody. See INS v. Lopez-Mendoza, 468 U.S. 1032, 1050-51 (1984). Accordingly, this is not a basis for relief.

**E.   Remedy**

Having concluded that Respondents violated Petitioner's procedural due process rights, the Court turns to the appropriate remedy.

After applying the Matthews test, the Supreme Court "usually has held that the Constitution requires some kind of a hearing before the State deprives a person of liberty or property." Zinermon v. Burch, 494 U.S. 113, 127 (1990)

(emphasis in original) (citations omitted). Certainly, there may be situations that urgently require arrest, in which a prompt post-deprivation hearing is appropriate. See id. at 128. However, absent evidence of urgent concerns, a pre-deprivation hearing is required to satisfy due process. See Guillermo M. R., 791 F. Supp. 3d at 1036.

Here, the Court finds that Petitioner's detention without a pre-deprivation hearing violated his due process rights and rendered his detention unlawful. To the extent Respondents argue that Petitioner is entitled only to a bond hearing, this argument "misapprehend[s] the purpose of a pre-detention hearing: if Petitioner is detained, he will already have suffered the injury he is now seeking to avoid." Jorge M.F. v. Jennings, 534 F. Supp. 3d 1050, 1055 (N.D. Cal. 2021); see also E.A. T.-B. v. Wamsley, 795 F. Supp. 3d 1316, 1324 (W.D. Wash. 2025).

The Court's order is limited to remedying the procedural due process violation that has occurred. Petitioner requests that the Court also enjoin Respondents from re-detaining him "without notice and a pre-deprivation hearing before this Court where the government bears the burden of justifying re-detention by clear and convincing evidence." Petition at 24. The Court declines to do so. The Court takes no position on whether, or under what circumstances, Respondents may lawfully seek to re-detain Petitioner in the future. That question is not squarely presented on this record and would depend on facts and circumstances not currently before the Court, including any changed circumstances, the procedures Respondents employ, and the statutory authority invoked. The Court's ruling today addresses only the lawfulness of Petitioner's current detention, which began on January 7, 2026, and which the Court concludes violates the Fifth Amendment. Nothing in this Order should be read to express any view on the lawfulness of any future detention decision.

8

**F.**     **Attorney's Fees**

Petitioner has requested costs and attorney's fees in this action pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412. See Petition at 24. The EAJA provides in part:

> A party seeking an award of fees and other expenses shall, within thirty days of final judgment in the action, submit to the court an application for fees and other expenses which shows that the party is a prevailing party and is eligible to receive an award under this subsection, and the amount sought, including an itemized statement from any attorney . . . representing or appearing in behalf of the party stating the actual time expended and the rate at which fees and other expenses were computed. The party shall also allege that the position of the United States was not substantially justified. Whether or not the position of the United States was substantially justified shall be determined on the basis of the record . . . which is made in the civil action for which fees and other expenses are sought.

28 U.S.C. § 2412(d)(1)(B).

The Court will consider an application requesting reasonable fees and costs under the EAJA that is filed within thirty days (30) of the judgment.

## IV.   ORDER

The Court GRANTS the Petition in part as follows:

1.     Petitioner's request for release is GRANTED. Respondents shall release Petitioner from detention within three (3) days.

2.     The parties shall file a joint status report within ten (10) days of the date of this Order confirming that Petitioner has been released.

3.     Petitioner's remaining claims and requests for relief are DENIED.

Date: April 17, 2026

DOUGLAS F. McCORMICK
United States Magistrate Judge

9